```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


CHARLES RAYMOND NOEL et al.    :
                               :
v.                             :   Civil No. WMN-06-2069
                               :
OFFICER CARLOS ARTSON et al.   :
```

### MEMORANDUM

Before the Court is Defendants' Motion to Bifurcate and Partially Stay Discovery. Paper No. 6. The motion is ripe. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion should be denied.

This case arises from the tragic shooting death of Cheryl Lynn Noel in the early morning hours of January 21, 2005, by a Baltimore County Police Officer. According to the Complaint, Ms. Noel and her husband, Charles Noel, were asleep in the upstairs master bedroom of their Dundalk rowhome when a "special weapons and tactics," or SWAT, team staged an assault on that home. After setting off a "flash bang" grenade at the Noel's front door and breaking down the door with a battering ram, at least ten officers stormed into the house, some running up the stairs towards the master bedroom. Startled by the noises and believing that their home had been invaded by criminal intruders, Ms. Noel grabbed a legally registered handgun and got to her feet. Immediately thereafter, Defendant Officer Carlos Artson kicked

open the bedroom door and seeing Ms. Noel holding a gun, shot her three times. Ms. Noel died of her injuries in her bedroom.

This action was brought by Ms. Noel's husband, two sons, and mother, against Officer Artson and four other members of the Baltimore County Police Department that took part in planning and/or execution of the raid on the Noel's home. In addition to various counts under 42 U.S.C. § 1983, the Maryland Constitution, and Maryland common law, Plaintiffs assert a separate claim against Baltimore County under Monell v. Dep't of Social Services, 436 U.S. 658 (1978). In their Monell claim, Plaintiffs assert that Baltimore County failed to adequately train and supervise its police officers. Plaintiffs also allege that Baltimore County "failed to develop adequate policies to limit the use of paramilitary police units to barricades, hostage situations, and terrorist attacks, rather than execution of routine drug warrants." Compl. ¶ 49. Furthermore, Plaintiffs allege that if paramilitary units are to be used for the execution of routine drug warrants, police should have been better trained to protect citizens.

Relying primarily on City of Los Angeles v. Heller, 475 U.S. 796 (1986) and Marryshow v. Town of Bladensburg, 139 F.R.D. 318 (D. Md. 1991), Defendants now move to bifurcate the trial of the claims against the individual defendants from that of the Monell claim against Baltimore County, and also seek to delay any

discovery related to the Monell claim until after the trial of the individual defendants.  Defendants' primary argument for bifurcation is that, in order to prove a "custom, policy, and practice" claim against the County, Plaintiffs must first prove that one of the individual or "active" defendants actually violated a federal constitutional right.  Mot. 2.  In Defendants' view, "[i]f the jury finds that the individual Defendants committed no violations then the case is over."  Id. at 3.  Thus, according to Defendants, bifurcation has the potential of avoiding altogether the expense of discovery and trial of the Monell claim.  Defendants also argue that bifurcation eliminates the potential prejudice to the individual Defendants of the admission of evidence of other instances of alleged police misconduct that would be relevant to the Monell claim, but not the claims against the individual Defendants.

     Under Rule 42(b), the Court may, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," order separate trials of any claims or issues. Fed. R. Civ. P. 42(b).  The district court has broad discretion in deciding whether to bifurcate claims for trial and the exercise of that discretion will be set aside only if clearly abused. Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir. 1993); Dawson v. Prince George's County, 896 F. Supp. 537, 539 (D. Md. 1995).  "Regardless of the latitude given to district courts in their decision to bifurcate trials,

3

separate trials remains the exception, rather than the rule." <u>Thrower v. Pozzi</u>, Civ. No. 99-5871, 2002 WL 91612, *5 (S.D.N.Y. Jan. 24, 2002).  Furthermore, the party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials. <u>Novopharm Ltd. v. Torpharm, Inc.</u>, 181 F.R.D. 308, 310 (E.D.N.C. 1998).

The Court will deny Defendants' request for bifurcation, at least at this time.  In reaching this decision, the Court notes that Defendants' primary justification for bifurcation, <u>i.e.</u>, that the trial of the claims against the individual Defendants could eliminate the need for the trial of the <u>Monell</u> claim, is built upon a partially erroneous premise.  In <u>Heller</u>, an excessive force incident to arrest case, the Supreme Court did hold that the district court properly dismissed a <u>Monell</u> claim against the municipality after a jury returned a verdict for the individual officers.  475 U.S. at 799.  The Court noted, however, that "no issue of qualified immunity was presented to the jury . . . ." <u>Id.</u> at 798.

Here, the individual Defendants have asserted qualified immunity (Answer, Affirmative Defense No. 2) and a jury could find that, while Ms. Noel suffered a violation of her constitutional rights, the individual officers nonetheless are immune from liability.  In that situation, a verdict for the individual Defendants would not lead to the automatic dismissal of the <u>Monell</u> claim.  See <u>Sunn v. City & County of Honolulu</u>, 852 F. Supp. 903, 907 (D. Haw. 1994) (noting that "circuits which

4

have considered the issue have held that Heller is inapplicable to cases where police officers are exempt from suit on qualified immunity grounds," and collecting cases).  It seems that this exception to the applicability of Heller could have particular relevance in a case such as this where the central focus might be, not so much what the individual officers did once they entered the Noels' home or the master bedroom,[1] but why paramilitary tactics were used to execute a routine drug warrant in the first place.

Additionally, Defendants have not met their burden of showing that trying the claims against them with the Monell claim against the County would be unfairly prejudicial.  It is possible that evidence of a County policy of using tactics such as those used on the morning of January 21, 2005, to execute drug warrants would actually assist the individual Defendants in establishing their asserted defenses of qualified immunity, good faith, legal justification, and absence of malice.[2]  See McIntosh v. District of Columbia, Civ. No. 96-200, 1997 WL 785624, *2 (D.D.C. Dec. 9, 1997) (observing that while an individual defendant might be found entitled to qualified immunity, "a defendant municipality

---

[1] Except for Officer Artson who is alleged to be the actual shooter and Officer Sweren who is alleged to have entered the bedroom just before Artson fired the third shot, the particular roles of the individual Defendants in approving, planning or executing the raid are unknown.

[2] See Answer, Affirmative Defense Nos. 7-9 (asserting as affirmative defenses that "[a]t all times mentioned in the Complaint, the Defendants acted in good faith . . . with legal justification . . . [and] without malice).

might nevertheless be held liable for a policy or custom of indifference to constitutional rights - a policy or custom that may explain why the defendant reasonably but wrongly believed his action to be constitutional").  Balanced against this uncertain prejudice is the certain added inconvenience and extra expense of two trials.  The Court would be particularly reluctant to require Ms. Noel's husband to go through the ordeal of repeating his testimony about the events of January 21, 2005.

Defendants are critical of Plaintiffs for using "boilerplate" language in opposing bifurcation.  Reply 1.[3]  The Court notes that Defendants' pleadings are equally devoid of any discussion or consideration of the particular facts in this case. Defendants suggest, seizing upon an apparent concession by Plaintiffs' counsel, that this Court "routinely" and "systematically" bifurcates claims against individual officers from Monell claims following the decision in Marryshow.  Reply 1. But as Judge Garbis observed in Marryshow, "[e]ach case must be considered in light of its particular facts and circumstances." 139 F.R.D. at 319.  Perhaps, after dispositive motions are presented and resolved, the particular facts in this action might lead the Court to conclude that bifurcation of the trial phase is warranted.  Defendants have not made that showing at this stage,

---

[3] This criticism is well placed, given that a large portion of Plaintiffs' opposition was obviously pasted from a pleading in a different action, with adaptation to the claims of the instant Plaintiffs.  See Opp. 7, 9 (referring to an "Officer Jones's" shooting of an individual named "Prince Jones," an incident that obviously has nothing to do with the instant action).

6

however, and, accordingly, the motion will be denied.

A separate order consistent with this memorandum will issue.

/s/
_____
William M. Nickerson
Senior United States District Judge

Dated: November 1, 2006